Gilberto Gierbolini, Juez Ponente
*659 TEXTO COMPLETO DE LA SENTENCIA
El 13 de septiembre de 2000, los apelantes de epígrafe (en adelante Nieves Méndez) presentaron Escrito de Apelación y solicitaron la revocación de la Sentencia emitida el 27 de junio de 2000, notificada el 24 de agosto de 2000, posteriormente archivada el 24 de agosto del 2000, en virtud de la Regla 43.3 de las de Procedimiento Civil, 32 L.P.R.A. Apéndice III, Regla 43, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla. Mediante dicha sentencia, el tribunal de instancia declaró Ha Lugar la Demanda de Daños y Peijuicios (Detención Ilegal, Difamación y Persecución Maliciosa) presentada por Maribel Cuevas Seda (en adelante Cuevas Seda).
*660 Por los fundamentos que expondremos, REVOCAMOS la Sentencia recurrida.
El 17 de febrero de 1999, Cuevas Seda presentó demanda de daños y perjuicios contra Nieves Méndez. En la misma, Cuevas Seda alegó que el 5 de octubre de 1998 compró en el dealer de Nieves Méndez un automóvil marca Hyundai Accent 1996, tablilla CGW 224, a cambio de dar en trade in su automóvil marca Toyota 1.6 del 1995, el cual fue tomado por la suma de $1,600.00, más el pago de una cantidad adicional de $150.00 en efectivo. El día de la compraventa, el automóvil no estaba disponible, por lo que el dealer le prestó otro vehículo Hyundai Excel 1994. Posteriormente, ella recibió el automóvil comprado. Cuevas Seda alegó que tuvo que devolver dicho automóvil porque presentaba una serie de defectos, entre éstos: los focos delanteros caídos, la pintura chorreaba y la puerta del chofer estaba defectuosa. También sostuvo que el señor Nieves Méndez quería reparar el vehículo, pero Cuevas Seda prefería la devolución del automóvil dado en trade in. Así las cosas, Nieves Méndez no quiso devolver el automóvil Toyota dado en trade in, por lo que Cuevas Seda inició una acción en el Departamento de Asuntos del Consumidor (DACO) por la venta engañosa del vehículo y solicitó la cancelación del contrato y la devolución de dinero (la cantidad de $1,600.00, que fue tomada a cuenta del automóvil Toyota dado en trade in). Ella sostiene que fue denunciada por Nieves Méndez por apropiación ilegal del vehículo, por lo que agentes de la Policía de Puerto Rico fueron a su apartamento y le requirieron comparecencia al cuartel de la policía de Aguadilla. Una vez allí, estuvo detenida bajo custodia, fue interrogada y restringida de su libertad por un período de cuatro horas. Finalmente, el caso fue archivado por falta de prueba. Sostiene en su demanda, que el proceso criminal iniciado en su contra fue a consecuencia de la conducta intencional y maliciosa de Nieves Méndez al imputarle la comisión de un delito, a sabiendas de que no había sido cometido. El 26 de enero de 1999, el DACO le hizo entrega a Cuevas Seda de los $1,600.00 reclamados en el proceso administrativo.
El 21 de abril de 1999, Nieves Méndez presentó contestación a la demanda donde solamente aceptó que Cuevas Seda compró el automóvil. El 27 de junio de 2000, notificada el 24 de agosto de 2000, el tribunal de instancia emitió sentencia y declaró Ha Lugar la demanda presentada por Cuevas Seda y ordenó a Nieves Méndez a pagar $20,000.00 en concepto de indemnización de daños y perjuicios, más la suma de $2,000.00 por concepto de honorarios de abogado e intereses a partir de la fecha de la presentación de la demanda.
El 20 de julio de 2000, Nieves Méndez presentó "Moción solicitando determinaciones de hechos y conclusiones de derecho adicionales" en virtud de la Regla 43.3 de las de Procedimiento Civil, supra. En la misma alegó que existen hechos que debieron ser acogidos como determinaciones del tribunal; entre éstos, que en el dealer del señor Nieves Méndez fueron reparados los defectos del automóvil comprado por Cuevas Seda, ésta tenía cita con el hojalatero para arreglar la pintura y ella no fue, ni al taller, ni al dealer, para explicar su ausencia. Luego transcurrió un mes desde que el vehículo estuvo en posesión de Cuevas Seda sin que ella hiciera acercamiento al dealer, por lo que el señor Nieves Méndez se dirigió al cuartel de la policía debido a que el dealer era el titular registral del automóvil confiado a Cuevas Seda y, en caso de un accidente ocasionado por ella, la empresa respondería por los daños ocasionados. Además, Cuevas Seda no aparecía y su propiedad estaba en la calle, sin que Nieves Méndez pudiera recobrar su auto o vender el otro.
El 8 de agosto de 2000, Cuevas Seda presentó su oposición. El tribunal de instancia, el 18 de agosto de 2000, notificada el 24 de agosto de 2000, declaró la moción No Ha Lugar.
No conforme, el 13 de septiembre de 2000, Nieves Méndez compareció ante nos mediante escrito de apelación y solicitó la revocación de la sentencia emitida por el tribunal de instancia que declaró Ha Lugar la demanda. En síntesis, Nieves Méndez alegó que el tribunal de instancia erró al determinar que quedaron configurados los elementos de las tres causas de acción (detención ilegal, difamación y persecución maliciosa) y al no aplicar las doctrinas de privilegio restringido, la del reporte justo y verdadero y al aplicar la doctrina anglosajona en materia de responsabilidad civil extracontractual a los efectos de que el archivo del caso por el fiscal equivale a una absolución. También sostuvo la corrección de los hechos esbozados en su moción solicitando determinaciones de hechos y conclusiones de derecho adicionales. El 13 de octubre de 2000, Cuevas Seda presentó su alegato y señaló que los errores señalados no fueron cometidos.
*661 Ií
Las causas de acción por detención ilegal, persecución maliciosa y difamación operan ex proprio vigore por estar reconocidas en las disposiciones constitucionales que consagran el principio de la dignidad del ser humano, el derecho a la libertad y el derecho de toda persona a la protección de la ley contra ataques abusivos a la honra, reputación y vida. Constitución de Puerto Rico, Carta de Derechos, Artículo II, Secciones 1,7 y 8.
La detención ilegal es definida como "el acto de restringir ilegalmente a una persona contra su voluntad o libertad de acción personal". Ayala v. San Juan Racing Corp., 112 D.P.R. 804, 813 (1982); Casanova v. González Padín, 47 D.P.R. 488, 498 (1934).
La procedencia de una acción civil por detención ilegal va a depender de criterios de razonabilidad a base de las circunstancias de cada caso. Hay que tomar en consideración los siguientes factores: "la persona del demandado, su edad, preparación intelectual, condiciones morales y sus experiencias previas; la persona del detenido, su edad, apariencia y su comportamiento; conocimiento que en la fecha de los hechos tuviera el demandado de la persona del detenido y aquéllas que con él se relacionaban; la conducta sospechosa, incluso la gravedad del delito que ella pudiera implicar, el lugar, la ocasión, y la frecuencia de dicha conducta." Ayala v. San Juan Racing Corp., supra, páginas 816-817. Hay que lograr el balance entre la obligación que toda persona tiene de cooperar contra el crimen y el derecho de toda persona de no ser privada ilegalmente de su libertad. Ayala v. San Juan Racing Corp., supra.
El Tribunal Supremo ha resuelto que el mero arresto de una persona inocente, usualmente no es base suficiente para configurar una causa de acción válida en qué basar una reclamación de daños. Un arresto legal no se convierte en ilegal, simplemente porque el imputado no sea hallado culpable. Se requiere una conducta en extremo negligente o criminal o maliciosa. Toledo Maldonado v. Cartagena Ortiz, 132 D.P.R. 249, 254 (1992).
Por otro lado, la acción por persecución maliciosa no es favorecida por los tribunales porque desalienta a la ciudadanía a cooperar en la persecución de los delitos. Raldiris v. Levitt & Sons of P.R., 103 D.P.R. 778, 781 (1975). Los requisitos para que quede configurada una acción por persecución maliciosa son: (1) que el demandante, en la acción por persecución maliciosa, haya sido denunciado criminalmente por el demandado, (2) que la causa haya terminado de manera favorable para el demandante; (3) que fue seguida maliciosamente y sin que existiera causa probable; y (4) que el demandante sufrió daños como consecuencia de ello. Ocasio v. Alcalde Municipio de Maunabo, 121 D.P.R. 37, 59 (1988); Fonseca v. Oyola, 77 D.P.R. 525, 528 (1954); Jiménez v. Sánchez, 60 D.P.R. 417, 421 (1942); Parés v. Ruiz, 19 D.P.R. 342, 346 (1913).
En Raldiris v. Levitt & Son's, supra, páginas 781-782, el Tribunal Supremo estableció que "para que sea accionable civilmente una causa originada en persecución maliciosa, no es suficiente el mero hecho de que el demandado informe a las autoridades la comisión de un delito, sino que debe demostrarse que el demandado instigó, activa y maliciosamente, la iniciación del proceso y que no fueron las autoridades, quienes, a base de su propia evaluación de los hechos, decidieron procesar al demandante." Véase, Jiménez v. Sánchez, 76 D.P.R. 370, 377-378 (1954).
Así, "...[u]n ciudadano que sospeche razonablemente que se ha cometido o que se piensa cometer un crimen tiene el privilegio [restringido], para su protección y la de la sociedad, de comunicárselo a las autoridades correspondientes o a quien él crea de buena fe que pueda tomar acción correctiva. La comunicación puede ser falsa, pero el privilegio persiste [citas omitidas]. Se pierde la inmunidad si la comunicación se entabla con quien no existe razón para creer que pueda proteger el interés del actor o de la comunidad, según sea el caso; o si el acto le imparte publicidad exclusiva al asunto; o si el actor se mueve por motivos impropios [citas omitidas]," Cortés Portalatín v. Hau Colón, 103 D.P.R. 734, 739 (1975) citado con aprobación en Ocasio v. Alcalde Municipio de Maunabo, supra, página 59.
En lo referente al concepto de difamación, en Puerto Rico está reconocida la acción de daños y pequicios. Esta acción va dirigida a vindicar el interés social sobre la reputación de la persona. Parrilla Báez v. Airport *662 Catering Service, 133 D.P.R. 263, 272 (1993). A esos efectos, existen dos causas de acción en daños por difamación: (1) la establecida en la Ley de Libelo y Calumnia, Ley de 19 de febrero de 1902, 32 L.P.R.A. Secciones 3141-3149, y (2) la derivada del Artículo 1802, basada en la publicación de una expresión difamatoria por culpa o negligencia, daños y relación causal entre estos dos elementos. Ojeda v. El Vocero, 137 D.P.R. 315, 326 (1994).
En una acción civil por difamación, hay que probar: (1) la falsedad de la información publicada; (2) los daños reales sufridos a causa de dicha publicación; (3) si el demandante es una figura privada, hay que demostrar que las expresiones fueron hechas negligentemente; (4) si el demandante es una figura pública, hay que demostrar que las expresiones se hicieron con malicia real, es decir, a sabiendas de que era falsa o con grave menosprecio de si era falso o no. Garib Bazain v. Clavell, 135 D.P.R. 475, 482 (1994); Méndez Arocho v. El Vocero de Puerto Rico, 130 D.P.R. 867, 877-878 (1992); Villanueva v. Hernández Class, 128 D.P.R. 618, 642 (1991); Maldonado y Negrón v. Marrero y Blanco, 121 D.P.R. 705, 713 (1988); Ocasio v. Alcalde Municipio Guaynabo, 121 D.P.R. 37, 61-62 (1988); Sociedad de Gananciales v. López, 116 D.P.R. 112, 115 (1984); Oliveras v. Paniagua Diez, 115 D.P.R. 257, 262 (1984); García Cruz v. El Mundo, 108 D.P.R. 174, 178 (1978); Zequeira Blanco v. El Mundo, 106 D.P.R. 432, 435 (1977); Torres Silva v. El Mundo 106 D.P.R. 415, 427 (1977). Así, la acción por difamación constituye una acción torticera intencional en cuanto a figuras públicas, y una acción de daños y perjuicios cuando el sujeto perjudicado es una persona privada.
El daño "es el menoscabo de la opinión que tienen los demás sobre la opinión de una persona en particular. En la medida en que la persona se entere que su honor ha sido perjudicado, es que existe el daño." Ojeda v. El Vocero, supra, a la página 329.
El elemento de publicación queda configurado cuando la expresión difamatoria es comunicada a una tercera persona. Acevedo v. Western Digital Caribe, 140 D.P.R. 452, 462 (1996); Giménez Alvarez v. Silén, 131 D.P.R. 91, 99 (1996); Porto v. Bentley P.R. Inc., 132 D.P.R. 331, 346-347 (1992).
La Ley de Libelo y Calumnia, supra, clasifica como privilegiadas ciertas comunicaciones. Una comunicación privilegiada "es aquélla que, a no ser por la ocasión o las circunstancias, sería difamatoria y sujeta a reclamación". Villanueva v. Hernández Class, supra, a la página 646; Díaz v. P.R. Ry., Lt. & P. Co., 63 D.P.R. 808, 811 (1944).
La Ley de Libelo y Calumnia, supra, considera privilegiada la comunicación hecha por un informante que da base en la preparación de un documento oficial. A esos efectos, la Ley establece:

"No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial u otro procedimiento cualquiera autorizado por la ley. No se presumirá que es maliciosa la publicación que se hace:

Primero: En el propio desempeño de un cargo oficial;

Segundo: En un informe justo y verdadero de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, o de algo dicho en el curso de dichos procedimientos;

Tercero: A un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular." 32 L.P.R.A. Sección 3144.
Los requisitos del reporte justo y verdadero son: “(1) el reporte tiene que ser justo en relación con el proceso que es objeto de información, (citas omitidas). El reporte es justo si éste captura substancia de lo acontecido y si toma en consideración el probable efecto que tendrá en la mente de un lector y oyente promedio, (2) lo publicado tiene que ser cierto; ... por cuanto refleja la verdad de lo expresado o acontecido en el procedimiento llevado a cabo". Villanueva v. Hernández Class, supra, a la página 647.
*663 El privilegio del reporte justo y verdadero protege a quien publica una información falsa o difamatoria, siempre que la misma refleje verazmente lo acontecido en los procedimientos, informes o acciones públicas u oficiales de agencias de gobierno. Villanueva v. Hernández Class, supra.

Ill

Las alegaciones de Cuevas Seda a los efectos de que tuvo que comparecer al cuartel de la policía de Aguadilla donde fue interrogada por un período de cuatro horas, no configuran el elemento de restricción a la libertad que requiere la doctrina de detención ilegal. Lo que hubo fue simplemente una citación de parte de Fiscalía de Aguadilla para que, ante la narración vertida por Nieves Méndez, Cuevas Seda presentara su versión de los hechos. Cuevas Seda no estuvo, ni detenida bajo custodia, ni bajo arresto.
Si examinamos los factores a considerar en las personas del demandante y demandado en una acción civil por detención ilegal, tenemos que Nieves Méndez (demandado) es un ciudadano que ante el temor de perder su propiedad o de incurrir en responsabilidad ante un posible accidente con el automóvil del cual figura como titular registra!, recurre a las autoridades en busca de orientación y ayuda. Cuevas Seda llevaba un tiempo razonable en la posesión del automóvil sin devolverlo, a pesar de que hubo un compromiso de hacerlo y a pesar de los requerimientos de Nieves Méndez. Era completamente razonable que Nieves Méndez, como titular del automóvil, procurara una solución al asunto ante la falta de diligencia de la demandante-apelada.
Por otro lado, el comportamiento de Cuevas Seda (demandante) fue lo que llevó a Nieves Méndez a recurrir a las autoridades. Este dio oportunidad para que Cuevas Seda tomara un curso de acción. Ante su falta de diligencia, Nieves Méndez hizo lo que cualquier persona puede entender como razonable.
Tampoco quedó configurada en derecho la acción por persecución maliciosa. Nieves Méndez no denunció criminalmente a Cuevas Seda, sino que fueron los oficiales, quienes, a base de lo que él narró, optan por citar a Cuevas Seda. Al no haber denuncia criminal, no pudo haber proceso alguno que terminara de manera favorable para Cuevas Seda. Lo único que hubo, como resultado de toda esta situación, fue una querella en DACO presentada por la propia señora Cuevas Seda el mismo día en que tenía que comparecer ante fiscalía. Por último, no aconteció el requisito de que el demandado actuó maliciosamente y sin que existiera causa probable, pues ante la decisión del fiscal de no proseguir un procedimiento criminal, Nieves Méndez no procuró siquiera una reconsideración del asunto. Como señaláramos anteriormente, el hecho de suministrar información a un agente del orden público sobre unos hechos, no constituye la instigación que es requerida para la configuración de la acción de persecución maliciosa. Para ello, es necesario que medie una imputación maliciosa, hecha de mala fe y sin fundamento razonable. Si la afirmación responde a una creencia razonable de veracidad, no puede conllevar responsabilidad. Nieves Méndez recurrió ante las autoridades ante el temor de que su propiedad sufriera daños o que su uso ocasionara daños a terceros. Esta actuación no conlleva responsabilidad.
Finalmente, tampoco están presentes los requisitos en derecho para una acción por difamación. Cuevas Seda entiende que el propósito de Nieves Méndez al acudir al cuartel era difundir información falsa y difamatoria a terceros, aun cuando tenía conocimiento de la querella iniciada en DACO. La única alegación concreta indicativa de la publicación de su comportamiento, es decir, de su comunicación a terceras personas, es el documento suscrito por el oficial de la policía denominado "denuncia" por el acto de "vehículo confiado" en el que detalla los hechos ocurridos. De esas alegaciones, no podemos inferir el elemento de publicación. El oficial de la policía limitó su actuación a recoger en un documento los hechos narrados ante él. Ninguna otra persona, aparte de los oficiales y de las partes tuvieron acceso al contenido del mismo. Lo allí contenido no fue comunicado a terceras personas. Además, la "denuncia" constituye una comunicación privilegiada, según surge de la propia Ley de Libelo y Calumnia, supra, por ser una publicación que es hecha en un procedimiento autorizado por la ley. La información, ni era falsa, ni fue publicada. De haber sido falsa la información, a la demandante-apelada le faltaría probar que las expresiones fueron hechas negligentemente. No encontramos que la actuación de Nieves Méndez fuera negligente. El acudió donde entendía que podían ayudarlo a resolver el asunto.
*664 IV
Por los fundamentos que anteceden, REVOCAMOS la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIOS 2002 DTA 7
1. La causa probable es "una sospecha fundada en circunstancias bastante poderosas para justificar la creencia que tiene una persona razonable de que la acusación es cierta." Parés v. Ruiz, 19 D.P.R. 342, 349-350 (1913). No se trata de si el delito se cometió o no, sino de la creencia del denunciante de que su imputación es cierta. Parés v. Ruiz, supra.
2. Figura pública es considerada toda aquella persona que posea: "(1) especial prominencia en los asuntos de la sociedad; (2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público, y (3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas." Torres Silva v. El Mundo, 106 D.P.R. 415, 4222 (1977).