Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| HÉCTOR JOAQUÍN SÁNCHEZ ÁLVAREZ<br><br>APELANTE<br><br>v.<br><br>360 TELECOM CORPORATION, et al.<br><br>APELADA | KLAN202400859 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2023CV11863<br><br>Sobre: Daños y perjuicios; difamación; libelo |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de octubre de 2024.

Comparece el señor Héctor Joaquín Sánchez Álvarez (Sr. Sánchez Álvarez; apelante) ante este foro intermedio y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI) el 10 de julio de 2024 y notificada al día siguiente 11 de julio de 2024. En su dictamen, el foro primario declaró Ha Lugar la *Moción de Desestimación* presentada por 360 Telecom Corporation, DBA Noticel, y Oscar J. Serrano (en conjunto Noticel; apelados) al amparo de la Regla 10.2 (5) de Procedimiento Civil y ordenó la desestimación con perjuicio del caso además del pago de costas a favor de los apelados.

Adelantamos que, por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I**

El 26 de diciembre de 2023 el Sr. Sánchez Álvarez presentó ante el TPI una *Demanda* de daños y perjuicios por difamación y libelo contra 360 Telecom Corporation y su fundador Oscar J. Serrano.[1] En esta, el apelante alegó que había sido víctima de un patrón de acciones continuas y continuadas mediante publicaciones realizadas en la plataforma digital de

---
[1] Apéndice del recurso, págs. 25-33.

Noticel el 2 de febrero de 2021, el 30 de enero de 2023 y el 7 de julio de 2023 con la intención de afectar su imagen, buen nombre y reputación ante la ciudadanía en general de la extensión territorial de Puerto Rico.[2] Alegó además que, a raíz de las mencionadas publicaciones, ha sufrido severas adversidades emocionales tales como pérdida de sueño, estrés, ansiedad, depresión y un constante sentido de fragilidad y vulnerabilidad que han afectado sus relaciones interpersonales, profesionales, comerciales y económicas.[3] Señaló también que se le habían infligido daños económicos ya que ideas comerciales y/o de negocios del apelante se habían visto afectadas por la mancilla a su buen nombre y reputación.[4] Por todo lo anterior, solicitó al tribunal como remedio que ordenara a los apelantes el pago de una cantidad no menor de $500,000 en daños económicos; una cantidad no menor de $750,000 por daños morales y a la imagen y nombre del Sr. Álvarez Sánchez y una cantidad no menor de $25,000 en concepto de costas y honorarios de abogado.[5]

Luego de algunos trámites procesales, Noticel sometió al foro primario una moción donde solicitó la desestimación del caso al amparo de la Regla 10.2 (5) por entender que el apelante no tenía una causa de acción que justificara la concesión de un remedio.[6] Al respecto, detalló que el alegado patrón consistía en la publicación de tres notas dentro de un período de dos años y que las alegaciones de falsedad eran conclusorias, pues no incluían alegaciones fácticas para refutar lo publicado por los apelados y establecer dicha falsedad.[7] En respuesta a lo anterior, el 30 de abril de 2024 el Sr. Sánchez Álvarez presentó su *Moción en Cumplimiento de Orden y Oposición a Solicitud de la Demandada* donde hizo hincapié en que el estándar para las alegaciones versa en la Regla 6.1 de Procedimiento Civil, la cual establece dos requisitos: (1) una relación sucinta y sencilla de los hechos demostrativos por los cuales la parte

---

[2] Apéndice del recurso, pág. 27.
[3] *Id.*
[4] Apéndice del recurso, pág. 30.
[5] Apéndice del recurso, pág. 31.
[6] Apéndice del recurso, págs. 50-60.
[7] Apéndice del recurso, págs. 51-52.

peticionaria tiene derecho a un remedio y (2) una solicitud del remedio a que crea tener derecho.[8] Arguyó que sus alegaciones cumplían con dicho estándar y, por tal motivo, todo lo relacionado a probar la falsedad o veracidad de las publicaciones atañía al procedimiento de descubrimiento de prueba.[9]

Sometidos ambos escritos, el TPI emitió su decisión mediante *Sentencia* el 10 de julio de 2024. En esta declaró Ha Lugar la *Moción de Desestimación* y, por consiguiente, ordenó la desestimación con perjuicio del caso. Su determinación estuvo basada en que, aun tomando como ciertas las alegaciones de la *Demanda*, estas eran insuficientes para establecer una causa de acción por difamación o libelo al no establecer que las publicaciones, independientemente de su corrección, fueron publicadas a sabiendas de que eran falsas o con grave menosprecio de si eran falsas o no. De igual manera dictaminó que tampoco había alegaciones de hechos que permitieran concluir que albergaban serias dudas sobre la certeza de la información, puesto que era el Sr. Álvarez Sánchez quien tenía el peso de alegar y probar lo mencionado.[10]

Luego de declarada No Ha Lugar una *Moción Solicitando Reconsideración al Amparo de la Regla 47 de Procedimiento Civil de Puerto Rico* presentada ante el TPI por el Sr. Sánchez Álvarez, este acude ante nosotros mediante el presente recurso y realiza los siguientes señalamientos de error:

a. Erró el TPI al [d]eclarar Ha Lugar [u]na Moción de Desestimación al [a]mparo de la Regla 10.2 (5), al margen de la doctrina de la misma de a [*sic]* la menor duda resolverla a favor del demandante y sin tomar como ciertas las alegaciones. Mucho menos en un caso de difamación por publicaciones de prensa que conllevaba descubrimiento de prueba ya que el concepto malicia real o intención o sabiendas de falsedad es uno subjetivo.

b. Erró el TPI al [h]acer [d]eterminaciones de [h]echos [s]obre [a]suntos [r]especto a los [c]uales [n]o [s]e [p]asó [p]rueba [n]i [t]ampoco [c]onocimiento [j]udicial [c]onforme a [d]erecho.

---

[8] Apéndice del recurso, págs. 66-68.
[9] *Id.*
[10] Apéndice del recurso, pág. 8.

El 19 de septiembre de 2024 emitimos una *Resolución* donde concedimos a los apelados hasta el 18 de octubre de 2024 para exponer su posición sobre el recurso. El 21 de octubre recibimos el escrito titulado *Oposición a Apelación civil*, el cual se admitió mediante nuestra resolución emitida el 21 de octubre de 2024.

Con el beneficio de los escritos de las partes, resolvemos.

**II**

**A**

La Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, estatuye las normas generales de las alegaciones y establece, en parte, que una alegación que exponga una solicitud de remedio comprende: "(1) una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho". Así, pues, las alegaciones constituyen aquellos enunciados "mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas", cuyo fin es "notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes". *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1061-1062 (2020), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, 6ta. Ed. LexisNexis, 2017, Sec. 2202, pág. 279.

Por otro lado, nuestro ordenamiento procesal permite la presentación de mociones dispositivas antes del juicio en sus méritos. Esto es, que una parte solicite que todos o algunos de los asuntos en controversia sean resueltos sin necesidad de una vista plenaria. A esos efectos, la moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008), citando a *Colón v. Lotería*, 167 DPR 625 (2006). La citada regla dispone "que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas

siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**; y (6) dejar de acumular una parte indispensable". 32 LPRA Ap. V, R. 10.2.

Es norma asentada que, al examinar una petición desestimatoria, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos del modo más beneficioso a la parte demandante. *Cruz Pérez v. Roldan Rodríguez*, 206 DPR 261, 267 (2021), citando a López García v. López García, 200 DPR 50, 69 (2018); *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013). Ello conlleva que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, págs. 428-429. Para que la moción de desestimación prevalezca "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013). Además, la desestimación tampoco procede si la demanda es susceptible de ser enmendada. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, pág. 429. La norma que impera en nuestro ordenamiento jurídico es que, cuando se interpone una moción de desestimación, el tribunal debe conceder el beneficio de cuanta inferencia sea posible de los hechos alegados en la demanda. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da Ed., Publicaciones JTS, 2011, Tomo II, pág. 532.

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'". *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, en la pág. 429 citando a *Pressure*

*Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994), *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Además, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. **Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba.** (Énfasis nuestro.) R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

El doctor Cuevas Segarra nos comenta que el Tribunal Supremo de Puerto Rico explicó de forma acertada en *Reyes v. Sucn. Sánchez Soto* lo siguiente:

> El texto de la actual Regla es a[u]n más favorable para un demandante, ya que la moción para desestimar no ha de considerarse s[o]lo a la luz de una causa de acción determinada y sí a la luz del derecho del demandante a la concesión de un remedio, cualquiera que [e]ste sea. En vista de ello, las expresiones que hicimos en el caso de Boulon, particularmente la de que una demanda no debe ser desestimada por insuficiencia, **a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación**, tienen aún mayor virtualidad […] (Énfasis nuestro.) J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Tomo II, Publicaciones JTS, 2011, pág. 528 citando a *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305,309 (1970).

Para que el demandado prevalezca al presentar una moción de desestimación al amparo de la Regla 10.2 (5), *supra* "debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor". *Id.* en la pág. 529. Sin embargo, esto último "se aplica solamente a los hechos bien alegados y expresados de manera clara y

concluyente que de su faz no den margen a dudas". Cuevas Segarra, *op. cit.*, en la pág. 529.

Por último, cabe mencionar que se plantea que cuando se presenta una moción de desestimación bajo la Regla 10.2 (5), *supra,* "**[l]a controversia no es si el demandante va finalmente a prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos [correctamente] alegados en la demanda**". *Id.* en la pág. 530. (Énfasis nuestro.) Así pues, al analizarse una moción de desestimación presentada tras una demanda "el tribunal debe concederle el beneficio de cuanta inferencia sea posible de los hechos alegados en dicha demanda". *Id.* en la pág. 532.

**B**

Nuestra Constitución reconoce el derecho de "toda persona a la protección contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Art. II, Sec. 8, Const. E.L.A., LPRA Tomo 1; *Meléndez v. El Vocero*, 189 DPR 123, 147 (2013); *Ojeda v. El Vocero de P.R.,* 137 DPR 315, 327 (1994). Esta protección, que sirve de base para la causa de acción por difamación, en muchas instancias se contrapone con el derecho a la libertad de expresión. *Porto y Siurano v. Bentley P.R., Inc.*, 132 DPR 331, 343 (1992). Al entrar en conflicto estos valores constitucionales, emerge la necesidad de determinar el peso respectivo del "interés social protegido por la libertad de prensa de promover la discusión franca y vigorosa de los asuntos públicos y el interés en la protección del ciudadano contra la publicación de información difamatoria falsa". *Torres Silva v. El Mundo, Inc.*, 106 DPR 415, 420 (1977).

El término 'difamación' ha sido definido como el desacreditar a una persona mediante la publicación de información que, de alguna manera, atente contra su reputación*. Pérez v. El Vocero de P.R.*, 149 DPR 427, 441 (1999). **Para que prospere esta acción, se requiere que el reclamante alegue y establezca que la "comunicación, que se reputa falsa y difamatoria, le causó daños y que se debió a conducta negligente".**

(Énfasis nuestro.) *Acevedo v. Western Digital Caribe, Inc.,* 140 DPR 452, 461 (1996).

A grandes rasgos, un demandante prevalecerá en una causa de acción por difamación si logra establecer "que la información publicada *es falsa* y que por causa de su publicación sufrió *daños reales*". *Villanueva v. Hernández Class, supra*, pág. 642. Ahora bien, el estándar de prueba requerido varía de acuerdo con la clasificación del demandante, es decir, si es figura pública o privada. *Torres Silva v. El Mundo, Inc.*, *supra,* págs. 421-422.

Acorde a ello, y a la protección que brinda nuestra Constitución a la libertad de prensa y expresión, el caso de *Torres Silva* explica que, para ser indemnizado por los daños sufridos a causa de una manifestación difamatoria, un demandante que sea considerado **figura pública** deberá demostrar que la parte demandada actuó con **malicia real.** En caso de que el peticionario sea una **figura privada**, se mantuvo la norma que requiere que la actuación de la persona natural o jurídica demandada sea **negligente** según la norma formulada por el Artículo 1802 del derogado Código Civil Código Civil de 1930, hoy día el Artículo 1536 del Código Civil de 2020.[11] *Torres Silva v. El Mundo, Inc.*, *supra,* págs. 421-423.

El término 'negligencia' se ha definido como "la falta del debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Ramos v. Carlo*, 85 DPR 353, 358 (1962). El Tribunal Supremo también delineó los criterios que debe utilizar un tribunal para determinar, en una acción por difamación, si la parte demandada incurrió en negligencia al hacer la publicación alegadamente libelosa. Estos son: (1) la naturaleza de la información publicada y la importancia del asunto sobre el cual trata, especialmente si la información es libelosa de su faz y puede preverse el riesgo de daño; (2) el origen de la información y la confiabilidad de su

---

[11] 31 LPRA sec. 5141 y 31 LPRA sec. 10801 respectivamente.

fuente; y (3) la razonabilidad del cotejo de la veracidad de la información, lo cual se determina tomando en consideración el costo en términos de dinero, tiempo, personal, la urgencia de la publicación, el carácter de la noticia y cualquier otro factor pertinente. *Torres Silva v. el Mundo, Inc.*, *supra*, pág. 425.

A los fines de prevalecer en un pleito de difamación, la "figura pública" está sujeta a "un criterio más riguroso de prueba" y "su derecho a la intimidad pesa menos que el derecho de otros a la libre expresión", **a menos que demuestre la existencia de malicia real en el acto de la publicación de la información.** (Énfasis nuestro.) *Clavell v. El Vocero,* 115 DPR 685, 692-693 (1984). Los elementos que deben concurrir para que se dé la condición de figura pública en la persona demandante en un pleito de difamación son los siguientes: (1) especial prominencia en los asuntos de la sociedad, (2) capacidad para ejercer influencia y persuasión en la discusión de asuntos de interés público y 3) participación activa en la discusión de controversias públicas específicas con el propósito de inclinar la balanza en la resolución de las cuestiones envueltas. *Oliveras v. Paniagua Diez,* 115 DPR 257, 263 (1984) citando a: *Torres Silva v. El Mundo, Inc.*, *supra* y *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 345 y 351 (1974), entre otros casos. Además, el Tribunal Supremo de los Estados Unidos definió el término "figura pública" de la siguiente manera:

> Hipotéticamente, puede ser posible que alguien se convierta en una figura pública sin haber ejercido acción deliberada alguna, pero estos casos de figuras públicas involuntarias deberán permanecer como la excepción. Generalmente, aquellos quienes adquieren el estatus de figura pública han asumido roles de especial prominencia en los asuntos de la sociedad. Algunos ocupan posiciones de tal poder e influencia que se consideran figuras públicas para todo propósito. Más comúnmente, aquellos clasificados como figuras públicas se han lanzado a la palestra de una controversia pública en particular para influir en la adjudicación de las cuestiones envueltas. En cualquiera de las circunstancias aquí señaladas, la figura pública atrae la opinión y la atención pública.[12] *Gertz v. Robert Welch, Inc.*,

---

[12] El texto original es el siguiente:

> *Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence*

*supra,* pág. 345, seguido en *Torres Silva v. El Mundo, supra*, pág. 422.

El proceso de calificar a una persona demandante en un pleito de difamación como persona pública "se complica a la luz del reconocimiento en Puerto Rico y fuera de aquí del hecho de que existen muchas clases de figuras públicas, entre ellas aun la de la persona que se convierte involuntariamente en personaje público". *Clavell v. El Vocero, supra,* pág. 693 citando a *García Cruz v. El Mundo, Inc.*, 108 DPR 174, 178-179 (1978).

Según la norma federal establecida en *New York Times v. Sullivan*, 276 U.S. 254 (1964), no es difamatoria la publicación, en el ejercicio de la libertad de prensa, de un informe falso o de comentarios injustificados concernientes a la conducta oficial de un funcionario público, a menos que la información fuere publicada a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. *Torres Silva v. El Mundo, Inc., supra,* pág. 421. Por tanto, el derecho constitucional a la libertad de prensa "incluye tanto la manifestación veraz como la incorrecta, el ataque vehemente, cáustico y muchas veces desagradablemente punzante al gobierno y funcionarios públicos", ya que el propósito de la garantía constitucional es mantener un clima abierto para la discusión franca y vigorosa de los asuntos de interés público y de la conducta y ejecutoria de los funcionarios públicos". *Zequeira Blanco v. El Mundo, Inc.,* 106 D.P.R. 432, 436 (1977) citando a *New York Times v. Sullivan,* supra, pág. 270.

A la luz de lo anterior, las limitaciones a la libertad de expresión y prensa "serán interpretadas restrictivamente, de manera que no abarquen más de lo imprescindible". *Muñiz v. Administrador del Deporte Hípico*, 156 D.P.R. 18, 24 (2002), citando a *Velázquez Pagán v. A.M.A.*, 131 DPR 568, 577 (1992). Ello promueve "la diseminación de información por la prensa en la forma más amplia posible" como algo "esencial para el bienestar

---

*in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.*

general de nuestra ciudadanía", pues una sociedad democrática como la nuestra requiere indudablemente que la prensa actúe libre de temores y presiones litigiosas, vengan del sector privado o del sector público. *Villanueva v. Hernández Class*, 128 DPR 618, 628 (1991) citando a *Associated Press v. United States*, 326 U.S. 1, 20 (1945).

**III**

El Sr. Álvarez Sánchez señaló en su recurso que el foro primario cometió dos errores al tomar su decisión sobre el caso. Al respecto, somos del criterio de que no les asiste la razón en ninguno de los dos señalamientos, por lo que el foro primario actuó conforme a derecho. Veamos.

El primero de ellos se resume en que el TPI fue en contra de la doctrina de la Regla 10.2 (5) al haber duda sobre las alegaciones y porque no tomó como ciertas las alegaciones. Añadió, además, que un caso de difamación conlleva descubrimiento de prueba ya que la malicia real o la intención o sabiendas de falsedad son criterios subjetivos. En la discusión de este error, el apelante acentuó que para cumplir con los requisitos de la acción de difamación era necesario pasar prueba al respecto y que, adicional a lo anterior, una moción de desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio no procede cuando las alegaciones pueden ser enmendadas. Esto es, siempre y cuando no se haya realizado una alegación responsiva.

Como hemos discutido en el derecho aplicable, al ser sometida una moción de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil es necesario que las alegaciones de la demanda se tomen como ciertas y se interpreten liberalmente y de la forma más favorable para el promovido. No obstante, este criterio es aplicable únicamente a los hechos bien alegados y solo cuando se realiza este ejercicio y se deduce que se cumplen con los requisitos de una causa de acción en derecho es que no procede su desestimación. En el caso que nos compete estamos ante una acción de daños por libelo y difamación. Ello exige que se demuestre que

la información publicada es falsa, que hubo daños reales y estos fueron ocasionados por la publicación, la relación causal entre ambos y en casos de figuras públicas que las expresiones publicadas se hicieron con malicia real, sabiendo que eran falsas o con grave menosprecio de si eran o no falsas. Todo esto previo a tener que pasar prueba, pues los hechos bien alegados son la llave que abre la puerta al proceso de descubrimiento de prueba.

Sin embargo, el apelante no cumplió con los requisitos establecidos en la Regla 6.1 de Procedimiento Civil pues sus alegaciones referentes a la falsedad de las publicaciones y la malicia real de los apelados son conclusorias tal y como lo subrayó el foro inferior. Ello significa que no cumplió con los requisitos necesarios, por lo que no tiene derecho a remedio alguno en derecho bajo una acción de daños por libelo o difamación o cualquier otra. Por tal motivo, el tribunal distinguió en su *Sentencia* lo siguiente:

> Además, alegaciones en términos generales de que una noticia se publicó maliciosamente, pero que omiten relacionar los hechos específicos en que se fundan las aseveraciones para sostener que la publicación fue realizada maliciosamente, son insuficientes para sostener una demanda. El reclamante tiene la obligación afirmativa de señalar hechos suficientes que, de ser creídos, demuestren que la persona demandada abrigaba serias dudas sobre la certeza de la información que publicaba, pues "la malicia real no se presume". *García Cruz v. El Mundo*, *supra*.
>
> […]
>
> Por último, e igual de importante, nuestra jurisprudencia también reitera que no es suficiente alegar en una causa de acción por libelo meramente que no se es una figura pública. Además, alegaciones en términos generales de que una noticia se publicó maliciosamente, pero que omiten relacionar los hechos específicos en que se fundan las aseveraciones para sostener que la publicación fue realizada maliciosamente, son insuficientes para sostener una demanda. El reclamante tiene la obligación afirmativa de señalar hechos suficientes que, de ser creídos, demuestren que la persona demandada abrigaba serias dudas sobre la certeza de la información que publicaba, pues "la malicia real no se presume".[13]

---

[13] Apéndice del recurso, págs. 7 y 9.

A las expresiones anteriores añadimos que un tribunal no debe permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba puedan probarse las alegaciones conclusorias de una demanda. Además, el apelante tuvo la oportunidad de enmendar sus alegaciones, más así no lo hizo.

Como último pronunciamiento añadimos que tampoco vemos que el foro primario haya incidido en el segundo señalamiento de error. Este se sintetiza en que el tribunal erró al hacer determinaciones de hechos sobre asuntos de los cuales no se pasó prueba ni se tomó conocimiento judicial conforme a derecho. Al respecto, nos resulta claro del expediente que el TPI no hizo determinaciones de hechos como alega el apelante, sino que, tal y como exige el análisis correspondiente a la hora de evaluar las alegaciones bajo el crisol de una moción de desestimación al amparo de la Regla 10.2 (5), meramente tomó dichas alegaciones como ciertas. Por lo que no hubo claro error manifiesto ni abuso de discreción de parte del foro primario como apuntaló el apelante.

**IV**

Por los fundamentos anteriormente expuestos, confirmamos la sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones